UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NOEMI GONZALEZ VALENTIN,

    Plaintiff,

v.                                                                                                   CASE NO. 6:15-cv-1927-Orl-MCR

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

    Defendant.
_____/

**MEMORANDUM OPINION AND ORDER**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her applications for a period of disability, disability insurance benefits, and supplemental security income. Plaintiff provided an amended onset date, alleging she became disabled on March 6, 2013. (Tr. 177-84, 199.) Plaintiff's applications were denied initially and on reconsideration. (Tr. 98-110, 113-26.) A hearing was held before the assigned Administrative Law Judge ("ALJ") on March 17, 2014, at which Plaintiff was represented by an attorney. (Tr. 28-54.) The ALJ found Plaintiff not disabled since March 6, 2013, the alleged onset date, through June 6, 2014, the date of the decision. (Tr. 11-22.)

Plaintiff is appealing the Commissioner's decision that she was not

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Docs. 18, 21.)

disabled during the relevant time period.  Plaintiff has exhausted her available administrative remedies and the case is properly before the Court. The undersigned has reviewed the record, the briefs, and the applicable law.  For the reasons stated herein, the undersigned determines that the Commissioner's decision is due to be **AFFIRMED**.

I.     **Standard of Review**

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d

835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II. Discussion

Plaintiff argues the following three general points on appeal: (a) that the ALJ erred in finding Plaintiff's mental impairment to be non-severe; (b) that the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence; and (c) that the ALJ failed to pose a proper hypothetical question to the vocational expert ("VE"). (Doc. 23 at 2-3.) Specifically, Plaintiff contends that the ALJ erred in relying on medical records prior to Plaintiff's amended onset date to determine that her mental impairment was non-severe. (*Id.* at 6-9.) Similarly, Plaintiff argues that the ALJ erred in determining that Plaintiff could perform a restricted range of light work because the ALJ relied on medical records prior to her amended onset date to make the determination. Plaintiff also argues that the ALJ failed to adequately weigh the post-onset date opinions of Plaintiff's treating facility. (*Id.* at 9-16.) As a result of such errors, Plaintiff asserts that the ALJ failed to pose a proper hypothetical to the ALJ accounting for all of Plaintiff's limitations. (*Id.* at 16-18.)

Defendant responds that the ALJ sufficiently determined that Plaintiff's mental impairment was non-severe and sufficiently accounted for Plaintiff's limitations in the RFC determination. Further, Defendant contends that the ALJ's reliance on the VE's testimony was proper. Defendant asserts that the ALJ

properly concluded that Plaintiff is not disabled and that substantial evidence confirms the ALJ's conclusion. (Doc. 26.)

### A.     The ALJ's Decision

The ALJ determined that Plaintiff had severe impairments, including history of shoulder injury and shoulder pain. (Tr. 14.) However, the ALJ determined that Plaintiff's medically determinable mental impairment was non-severe. (Tr. 14-16.) Specifically, the ALJ found no more than minimal limitation in Plaintiff's ability to perform basic mental work activities. (Tr. 14.) The ALJ then determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 16.)

Continuing on with the evaluation, the ALJ made the following RFC determination:

> the undersigned finds that the claimant has the [RFC] to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can sit, stand, or walk six hours in an eight-hour workday. She is limited to frequent reaching in any direction and frequent handling with her right dominant arm. She should not work holding items above her head with her right dominant arm.

(*Id.*) In making this finding, the ALJ assigned some weight to Plaintiff's treating physician, Dr. Rosendo. (Tr. 19.) The ALJ also afforded some weight to Plaintiff's treating physician, Dr. Macksoud, and state agency medical consultant, Dr. Baltazar. (*Id.*) The foregoing opinions were rendered prior to Plaintiff's

amended onset date of March 6, 2013.  (*Id.*)

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible for the reasons explained in the decision.  (Tr. 17.)

With the benefit of testimony from VE Linda Ebersold, the ALJ determined that there are other jobs existing in significant numbers in the national economy that Plaintiff can perform based on her age, education, work experience, and RFC, such as counter clerk and usher.  (Tr. 21.)  As such, the ALJ found that Plaintiff was not disabled.  (*Id.*)

### B.   The ALJ's Determination at Step Two Was Proper

Plaintiff initially argues that substantial evidence does not support the ALJ's decision that her mental impairment was non-severe because the ALJ relied on medical evidence and opinions pre-dating her amended onset date.  In support of her argument, Plaintiff asserts that evidence of record subsequent to her amended onset date, specifically referencing an involuntary hospitalization on May 25, 2015, shows that she suffered from a severe impairment.

At step two, the claimant bears the burden of proving the existence of a severe impairment.  *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The "'severity' of an ascertained disability must be measured in terms of its effect

upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1988); *see also* 20 C.F.R. § 404.1520(c) ("If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment . . ."); Social Security Ruling 96-3p (in considering an alleged impairment, the ALJ must evaluate evidence about its "functionally limiting effects" to determine how it affects the claimant's ability to do basic work activities).

      The undersigned finds that the ALJ's decision that Plaintiff's mental impairment was non-severe is supported by substantial evidence.  Contrary to Plaintiff's argument, the ALJ did not solely consider or rely on pre-onset medical records in making the determination that Plaintiff's mental impairment was non-severe.  In making the determination, the ALJ did consider a November 6, 2012 consultative medical examination by Dr. Najib Kirmani and the opinion of state agency mental health consultant, Catherine Nunez, Ph.D.  The ALJ noted that the November 6, 2012 examination revealed that Plaintiff's mood and affect were euthymic, that she was cooperative with the examiner, that her thought process and perception were normal, and that her insight was adequate and judgment intact.  (Tr. 14, 504.)  The ALJ also noted that Dr. Nunez, considered a specialist in the field of mental health, opined that Plaintiff's affective disorder was a non-

severe impairment. (Tr. 15, 79, 90.) The ALJ gave Dr. Nunez's opinion great weight as it was "well supported by the longitudinal review of the *entire* medical record, including the findings on mental status examinations, the lack of psychiatric counseling, and the reported activities of daily living inconsistent with total debilitation." (Tr. 15.)

The ALJ continued on with the analysis, considering and discussing medical records from 2013, including the May 25, 2013 involuntary hospitalization. (*Id.*) However, the ALJ found that the records revealed that Plaintiff's mental impairment does not constitute more than minimal limitation in Plaintiff's ability to perform basic mental work activities. Specifically, the ALJ referenced the March and April 2013 mental examinations showing Plaintiff was alert and oriented times three. (Tr. 15, 567, 571.) The ALJ also discussed Plaintiff's involuntary hospitalization at Lakeside Behavioral Healthcare from May 25 to May 26, 2013. (Tr. 15.) The ALJ noted, however, that Plaintiff was mentally alert, cooperative, and oriented times four at the time of discharge. (Tr. 15, 510.) Plaintiff's thought process was organized at the time of discharge. (Tr. 510.) The ALJ also pointed out that Plaintiff was discharged with a GAF of 61, suggesting mild symptoms. (*Id.*) The ALJ further considered the post-involuntary hospitalization medical records. The ALJ discussed the Plaintiff's mental examinations from July to November 2013 and noted that Plaintiff's mood, affect, and thought content were normal during those examinations. (Tr. 15, 578, 584,

589, 596.) The mental examinations "[r]evealed no impairment" with respect to Plaintiff's thought content. (Tr. 578, 584, 589, 596.)

The ALJ also considered the four broad functional areas from 20 C.F.R. §§ 404.1520a and 416.920a with respect to Plaintiff's mental impairment. In the first functional area, activities of daily living, the ALJ determined Plaintiff had a mild limitation. (Tr. 14.) The ALJ observed that Plaintiff had prepared meals, performed some household chores including laundry, drove a vehicle, handled money, shopped, did occasional yard work, and took care of her personal grooming needs. (Tr. 14, 42, 46-47, 277-78, 503-04.) The ALJ then considered the second functional area, social functioning, and determined Plaintiff had mild limitation as Plaintiff indicated no problem getting along with others, visiting friends and family, attending church, and Plaintiff was reported as cooperative during mental examinations. (Tr. 14-15, 43, 503-04.) Next, with respect to the functional area of concentration, persistence, or pace, the ALJ found Plaintiff had a mild limitation. (Tr. 14-15.) The ALJ noted Plaintiff indicated no problems remembering, completing tasks, concentrating, understanding, or following instructions. (Tr. 14, 280.) Lastly, the ALJ found Plaintiff had not experienced any episodes of decompensation, which have been of extended duration. (Tr. 14-15).

Plaintiff appears to argue that the ALJ should have found Plaintiff's mental impairment to be severe because records indicate a diagnosis of depression.

8

Specifically, Plaintiff discusses the May 2013 involuntary hospitalization and discharge diagnosis of Major Depressive Disorder, Single Episode in support. (Doc. 23 at 8.) However, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (quoting *McCruter*, 791 F.2d at 1547); *see also Hutchinson v. Astrue*, 408 F. App'x 324, 326 (11th Cir. 2011) ("[P]roof of the mere existence of impairments does not prove the extent to which they limit a claimant's ability to work."). Here, Plaintiff failed to reference any evidence indicating that her mental impairment limited her ability to work. Moreover, Plaintiff failed to show that the impairment lasted or could be expected to last for a continuous period of not less than twelve months.[2] *See* 20 C.F.R. §§ 404.1505(a), 404.1509, 404.1520(a)(4)(ii), 416.905(a), 416.909, 416.920(a)(4)(ii).

Overall, the ALJ's finding that Plaintiff's mental impairment was not severe is supported by substantial evidence and Plaintiff failed to point to any evidence showing the mental impairment caused any limitations on Plaintiff's ability to perform work activities. Therefore, the ALJ's decision is due to be affirmed on

---

[2] The undersigned disagrees to the extent that Plaintiff argues the ALJ erred in failing to find Plaintiff's involuntary hospitalization to be an episode of decompensation which has been of extended duration, as Plaintiff was hospitalized for two days. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(C) ("The term repeated episodes of decompensation, each of extended duration in these listings mean three episodes within 1 year, or an average of once every 4 months, *each lasting for at least 2 weeks*.") (emphasis added).

this point. *See Freeman v. Barnhart*, 220 F. App'x 957, 961 (11th Cir. 2007) (holding that the ALJ did not err in finding the claimant's depression to be non-severe because substantial evidence showed that her mental illness did not significantly limit her ability to do basic work activities); *Obsorn v. Barnhart*, 194 F. App'x 654, 664 (11th Cir. 2006) (same).

### C.  The ALJ's RFC Determination Was Proper

Plaintiff next argues that the ALJ failed to properly evaluate Plaintiff's RFC. Specifically, Plaintiff asserts that the ALJ erred in failing to assign weight to the 2013 treatment records from Community Health Centers. Defendant asserts that the ALJ properly evaluated the record opinion evidence and Plaintiff's RFC determination is supported by substantial evidence.

The ALJ is required to consider all of the evidence, including medical opinions, in the claimant's record when making a disability determination. *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) ("We will assess your [RFC] based on all the relevant evidence in your case record."). In addition, the ALJ must state the weight afforded to the evidence considered. *Ryan v. Heckler*, 762 F.2d 939, 941-42 (11th Cir. 1985). Specifically, the judge "should state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence." *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990). Indeed, "[u]nless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his

decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (quoting *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979)). Although the ALJ is required to consider all of the evidence, he is not required to discuss all of the evidence presented, but rather must explain why "significant probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

Plaintiff asserts that *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011), is controlling and requires reversal of the Commissioner's decision because the ALJ failed to indicate a specific level of weight given to the treatment notes of Community Health Center. (Doc 23 at 10-15). In *Winschel*, the Eleventh Circuit held that "whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor." *Roberts v. Comm'r of Soc. Sec.*, No. 6:10-cv-930-ORL-DAB, 2012 WL 85172, at *4 (M.D. Fla. Jan. 11, 2012) (citing *Winschel*, 631 F.3d at 1178-79, 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2), and *Sharfarz v. Bowen*, 825 F.2d 278, 279-80 (11th Cir. 1987)). Accordingly, the court held that "when

the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,' we will decline to affirm 'simply because some rationale might have supported the ALJ's conclusion.'" *Winschel*, 631 F.3d at 1179 (citing *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)). Despite Plaintiff's contentions to the contrary, a review of the ALJ's decision in the instant case reveals that the ALJ did not commit reversible error with respect to the RFC determination.

First, this is not a situation where the ALJ simply ignored the evidence from Community Health Centers. Instead, the ALJ specifically discussed the treatment notes as follows:

> The medical record since the alleged onset date shows the claimant was treated for shoulder pain at the Community Health Centers from March to April 2013. On physical examinations, there was a limited range of motion and diminished strength in her right shoulder due to pain. An x-ray of the right shoulder in March 2013 revealed widening of the right acromioclavicular distance, with abnormal configuration of the lateral end of the clavicle. However, those findings were noted to possibly represent the sequelae of a prior surgery or trauma. In addition, there was no gross abnormality involving the glenohumeral articulation; no acute fracture or dislocation was depicted; the osseous structures were well aligned; and soft tissues were unremarkable. The claimant was diagnosed with right shoulder pain (Exhibit 9F).

(Tr. 17-18.) Further, the ALJ went on to discuss the relevant opinion evidence and discounted Dr. Rosendo's opinion that Plaintiff is limited to no use of her right arm, referencing, *inter alia*, the record evidence inconsistent with such opinion, including the findings of the March 2013 x-ray discussed in the Community Health

Centers treatment notes. (Tr. 19, 566-67, 569, 572.) Nevertheless, the ALJ assigned limitations with respect to Plaintiff's right shoulder impairment, including limiting her to "frequent reaching in any direction and frequent handling with her right dominant arm," as well as "not work[ing while] holding items above her head with her right dominant arm." (Tr. 16.)

While Plaintiff is correct that the ALJ did not specifically state the weight assigned to the Community Health Centers treatment notes, the notes are not opinions that the ALJ must weigh because they are not statements reflecting judgment about the nature and severity of Plaintiff's impairment. *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, *what you can still do despite impairment(s), and your physical or mental restrictions*.") (emphasis added); *Winschel*, 631 F.3d at 1178-79 (same). The treatment notes from Community Health Centers contain no opinions regarding what Plaintiff can still do despite her impairments, and they do not identify specific physical or mental restrictions caused by her impairments. Thus, Plaintiff's argument that the ALJ committed reversible error in failing to assign weight to the treatment notes is without merit.

Even assuming the treatment notes contained opinions that needed to be weighed, Plaintiff's argument would still be without merit. Any purported failure

13

by the ALJ to weigh the records from Community Health Centers was harmless because the findings contained in the records, such as limited range of motion and diminished strength in Plaintiff's right shoulder, do not directly contradict the ALJ's RFC determination, which included the right shoulder limitations of only frequent reaching and handling with her right arm, as well as no working while holding items above her head. *See, e.g., Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (per curiam) (holding that the failure to weigh a medical opinion is harmless error if the opinion does not directly contradict the ALJ's RFC determination); *Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) (similar). Therefore, any error in the ALJ's failure to explicitly weight the records from Community Health Centers was harmless.

  Finally, as presented in Plaintiff's first issue, Plaintiff argues that the ALJ erred in relying on pre-onset date records. However, the ALJ did not ignore the post-onset records, but rather considered and discussed them in making the RFC determination. (Tr. 17-19.) Moreover, the ALJ has the duty to consider all of the relevant record evidence in making the RFC determination. *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Plaintiff failed to provide the Court with any persuasive support for precluding the ALJ from considering and referencing the pre-onset date opinions. *Cf. Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004) ("In determining whether Phillips can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other

14

evidence in the case.") (citation omitted). The ALJ here weighed the evidence and determined Plaintiff's RFC, which is supported by substantial evidence. The Court will not undertake the task of re-weighing the evidence on appeal.

### D. The ALJ's Determination at Step Five Was Proper

Plaintiff finally argues that the determination at step five was not supported by substantial evidence. Namely, Plaintiff asserts that this determination was improper because of the ALJ's failure to include additional limitations in the RFC determination. However, as already discussed above, the undersigned finds that the ALJ did not err in making the step two and RFC determinations. In the hypothetical to the VE, the ALJ included all limitations made in the RFC determination. (Tr. 51-53.) From that hypothetical, the VE recited two occupations that Plaintiff could perform. (Tr. 52-53.) The ALJ was not required to incorporate unsupported allegations or unsupported opinions within the hypothetical to the VE. *See, e.g., Crawford*, 363 F.3d at 1161; *Graham v. Bowen*, 790 F.2d 1572,1576 (11th Cir. 1986).

Accordingly, it is **ORDERED** that:

1. The Commissioner's decision is **AFFIRMED**.

2. The Clerk of Court be directed to enter judgment accordingly and close the file.

**DONE AND ENTERED** at Jacksonville, Florida, on March 3, 2017.

                                                MONTE C. RICHARDSON
                                        UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record